# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH BOWEN,** | : | |
| **Plaintiff** | : | |
| **v.** | : | **CIVIL ACTION NO. 3:05-1512** |
| **JOSEPH RYAN, JOHN** | : | |
| **STEPANIK, KENNETH D.** | | |
| **KYLER, FREDERICK K.** | : | **(MUNLEY, D.J.)** |
| **FRANK, A.S. WILLIAMSON,** | | **(MANNION, M.J.)** |
| **G.N. PATRICK, C.R. MYERS,** | : | |
| **FRANK D. GILLIS, R.E.** | | |
| **JOHNSON, B.L. LANE, J.** | : | |
| **PIAZZA, JEFFREY A. BEARD,** | | |
| **DAVI T. OWENS, RAYMOND** | : | |
| **CLYMER, JOSEPH LEHMAN,** | | |
| **MARTIN F. HORN,** | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

Presently pending before the court are: (1) the defendants' motion to dismiss the plaintiff's complaint, (Doc. No. 13); (2) the plaintiff's motion for summary judgment, construed by the court as a motion for judgment on the pleadings, (Doc. No. 18); and (3) four motions for temporary restraining orders filed by the plaintiff, (Doc. Nos. 28, 30, 32, 34).

By way of relevant background, on July 29, 2005, the plaintiff, an inmate at the State Correctional Institution, Coal Township, ("SCI-Coal Township"), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. §1983. (Doc. No. 1). On August 11, 2005, the plaintiff submitted the proper filing fee. (Doc.

No. 5).

By order dated August 12, 2005, it was directed that process issue. (Doc. No. 6).

On November 1, 2005, the defendants filed a motion to dismiss the plaintiff's complaint, (Doc. No. 13), along with a supporting brief, (Doc. No. 14), and an appendix, (Doc. No. 15)[1]. Rather than file a brief in opposition to the defendants' motion to dismiss, on November 10, 2005, the plaintiff filed what he termed as a motion for summary judgment, (Doc. No. 18), along with a supporting brief, (Doc. No. 19). No materials outside of the pleadings were submitted in support of this motion. Moreover, the only argument raised in the motion is that the plaintiff has alleged sufficient personal involvement on behalf of each of the defendants to proceed under §1983. As such, the court construes the plaintiff's motion as one for judgment on the pleadings.

On July 6, 2006, the plaintiff filed four separate motions for temporary

_____

[1]The defendants' appendix consists of three documents of which the court may take judicial notice. The first, Exhibit 1, is DOC Policy Statement DC-ADM 802, Administrative Custody Procedures. The second, Exhibit 3, is a docket sheet from the Philadelphia Court of Common Pleas. Finally, Exhibit 4, is a docket sheet from the Montgomery County Court of Common Pleas.

The appendix also contains a decision by the Program Review Committee, ("PRC"), dated September 29, 2005, which is related to the subject matter of the plaintiff's complaint. Although this document was not attached to the plaintiff's complaint, he references hearings before the PRC in his complaint and has not challenged the authenticity of the document submitted by the defendants. Therefore, in considering this document, the court has not converted the defendants' motion to one for summary judgment.

restraining orders, each with supporting briefs.  (Doc. Nos. 28-35).

Defendants' motion to dismiss is brought pursuant to provisions of Fed.R.Civ.P. 12(b)(6).  This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can granted.  Dismissal should only occur where it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Accordingly, dismissal is appropriate "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint."  Trump Hotel and Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998)(citing ALA, Inc. v. CCair, Inc., 29 F.3d 855, 859 (3d Cir. 1994)).

In deciding a motion to dismiss, a court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiff has identified as the basis of his claim.  See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

It must also be remembered that when considering a motion to dismiss under Rule 12(b)(6), the important inquiry is not whether the plaintiff will

3

ultimately prevail on the merits of his claim, but only whether he is entitled to offer evidence in support of them.  Scheuer v. Rhodes, 416 U.S. 233, 236 (1974).

To the extent that the court construes the plaintiff's motion for summary judgment as a motion for judgment on the pleadings, there is no material difference in the applicable legal standards for dismissing a complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).

According to the plaintiff's complaint, he was transferred to SCI-Dallas on October 31, 1984, and placed in administrative custody status.  On the following day, he received a hearing before the Program Review Committee, ("PRC"), at which his request to be released from administrative custody was denied.  On the same day, the plaintiff alleges that he was transferred out of administrative custody status, and placed in "punitive punishment[2] permanent

_____

[2]Despite the plaintiff's characterization, at times, of his placement on the Restricted Release List as "punitive punishment," DC-ADM 802, Administrative Custody Procedures, provides that the "Restricted Release List" is "[a] list of inmates, identified by the Office of the Secretary, who are restricted from release from [administrative custody] status without the prior approval of the respective Regional Deputy Secretary."  DC-ADM 802(IV)(K)(emphasis added).  Therefore, there is no indication that the plaintiff's placement on the Restricted Release List altered his administrative custody status.

lockdown custody status, under the control of a second (new) Policy directive called the Restricted Release List."  The plaintiff alleges that his placement on the Restricted Release List violated his right to due process because he did not receive any advance written notice or a written statement of the reasons why this "disciplinary" action was taken.

The plaintiff alleges that he has been on the Restricted Release List and confined in administrative custody for a period of over 20 years.  While he admits that he has received PRC hearings and appeals, he alleges that, as long as he is on the Restricted Release List, the Superintendent at any facility where he is confined has no authority under DC-ADM 802 to release him into the general population.  Therefore, the plaintiff alleges that any hearings or appeals are "rote" and "meaningless."

On or about March 8, 2004 the plaintiff alleges that DC-ADM 802 was amended, effective May 5, 2004.  According to the plaintiff, the amended DC-ADM 802 is illegal because it incorporates the provisions with respect to the Restricted Release List.  He further alleges that the amendment was not properly promulgated in accordance with the Commonwealth Documents Law, 45 P.S. §1101, et seq., and is, therefore, null and void.

Finally, the plaintiff alleges that the amendment "terminated" his PRC hearing and appeal rights.  To this extent, the plaintiff states:

What this means is that, all of plaintiff (AC)

administrative custody P.R.C. hearings under Policy:DC:ADM:802 are all just rote fashion, perfunctory in manner, and meaningless in substance, because the Superintendent of Prisons where the Plaintiff is housed has (no) authority under Poicy:DC:ADM:802 to release this plaintiff back into general population through an (AC) administrative custody P.R.C. hearings, why, because the plaintiff is on the Restricted Release List.  What this means is that, all of plaintiff (AC) administrative custody appeals are all just rote fashion, perfunctory in manner, and meaningless in substance, because the Superintendent of Prisons where the plaintiff is housed has (no) authority under Policy:DC:ADM:802, to release this plaintiff out of the hole and back into general population through a appeal request slip at (no) time, why, because the plaintiff is on the Restricted Release List."

As a result of his continued confinement in administrative custody, the plaintiff alleges that he has suffered ". . . extreme mental anguish, weight loss, sensory deprivation, depression stress, fatigue, insomia (sic), loss of some of his general population privileges, including contact visits with his family. . ."

The plaintiff alleges that his placement on the Restricted Release List and continued confinement in administrative custody are in violation of his Eighth, and Fourteenth Amendment rights[3].  He is seeking various forms of injunctive relief, as well as compensatory and punitive damages.

---

[3]Initially, the plaintiff included general claims of First and Fourth Amendment violations, as well.  However, within his complaint, the plaintiff only sets forth allegations with respect to violations of his Eighth and Fourteenth Amendment rights.

In their motion to dismiss the plaintiff's complaint, the defendants first argue that any of the plaintiff's claims accruing before July 29, 2003, are barred by the applicable statute of limitations.  (Doc. No. 14, pp. 4-5).

In Wilson v. Garcia, 471 U.S. 261 (1985), the Supreme Court held that §1983 actions were governed by "the one most appropriate statute of limitations [in each state's laws] for all §1983 claims."  The Court later added that "all §1983 claims should be characterized by statute of limitations purposes as actions to recover damages for injuries to the person." Springfield Twp. School Dist. v. Knoll, 471 U.S. 288 (1985).  Thus, §1983 actions instituted in Pennsylvania are governed by the two-year limitations period for personal injury actions set forth in PA.CONS.STAT.ANN. §5524. Knoll v. Springfield Twp. School Dist., 763 F.2d 584 (3d Cir. 1985).

To the extent that the plaintiff challenges his initial placement on the Restricted Release List and in administrative custody, this first occurred back in 1984.  As this alleged violation occurred well before July 29, 2003, two years prior to the plaintiff's filing of the instant action, any claim relating to the violation is barred by the applicable statute of limitations[4].  Therefore, the

---

[4]The court notes that this cannot be considered a continuing type of violation.  A continuing violation is occasioned by continued unlawful acts, not continued ill effects from an original violation by an act committed in a period barred by the statute of limitations.  Sandutch v. Muroski, 684 F.2d 252 (3d Cir. 1982).  Pennsylvania does not recognize separate limitations periods for
(continued...)

defendants' motion to dismiss the plaintiff's complaint should be granted to this extent.

Similarly, any Eighth Amendment claim based upon the plaintiff's placement on the Restricted Release List and in administrative custody prior to July 29, 2003, would also be barred by the statute of limitations, and should be dismissed.

Finally, to the extent that the plaintiff challenges the amendment to DC-ADM 802, which was issued on March 8, 2004, and made effective May 5, 2004, this claim did not accrue prior to July 29, 2003, and is, therefore, not barred by the statute of limitations.

The defendants next argue that the plaintiff's complaint should be dismissed for his failure to exhaust administrative remedies.  (Doc. No. 14, pp. 5-6).

With respect to this argument, the Third Circuit has held that failure to

---

[4](...continued)

distinct injuries; the cause of action, once it has accrued based upon any injury governs all injuries caused by the same harm.  See Ross v. Johns-Manville Corp., 766 F.2d 823, 827 (3d Cir. 1985); Cathcart v. Keene Indus. Insulation, 324 Pa.Super. 123 (1984).

Here, the plaintiff alleges that his rights were violated and, as a result, injury was incurred, in 1984, when he was placed on the Restricted Release List and in administrative custody.  The fact that the plaintiff was continued in administrative custody does not act to renew the statute of limitations, as any injury caused by that action arose out of the plaintiff's initial placement on the Restricted Release List and in administrative custody.

exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant.  Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002).  Moreover, the court has found that dismissal of a plaintiff's claims for failure to exhaust on a motion to dismiss, rather than a motion for summary judgment, was improper where there was insufficient evidence without discovery to conclude that plaintiff had failed to exhaust.  See Brown v. Croak, 312 F.3d 109 (3d Cir. 2002).  See also Greer v. Smith, 2003 WL 1090708 (3d Cir. (Pa.))(where the defendants submit materials outside of the pleadings in conjunction with an exhaustion defense the court must convert the motion to one for summary judgment).  Therefore, at this juncture of the proceedings, the defendants' motion to dismiss should be denied to the extent that they argue that the plaintiff has failed to exhaust his administrative remedies.

Finally, the defendants argue that the plaintiff has failed to state a substantive claim upon which relief can be granted.  (Doc. No. 14, pp. 6-12).

With respect to the plaintiff's due process claim, a procedural due process analysis involves a two step inquiry: (1) does the complaining party have a protected liberty or property interest and, if so, (2) does the available process comport with all constitutional requirements.  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

Under the first step of the procedural due process analysis, a liberty interest can arise in one of two ways: (1) it can be derived directly from the

9

Due Process Clause of the Federal Constitution, or (2) it can arise from the law of the state. Asquith v. Department of Corrections, 186 F.3d 407, 408 (3d Cir. 1999).

It is well established that there is no liberty interest created directly by the Fourteenth Amendment that requires or permits an inmate to be placed in and/or to remain in the general population of a jail. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 223-27 (1976). Therefore, the plaintiff has no liberty interest arising from the Due Process Clause that would prevent his placement in administrative custody. It must then be determined whether the plaintiff has a state created liberty interest.

In Sandin v. Connor, 515 U.S. 472 (1995), the United States Supreme Court addressed the issue of state created liberty interests. In doing so, the Court held that a state government "may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483. Whether an inmate has suffered an "atypical and significant hardship" as a result of confinement depends on two factors: (1) the amount of time an inmate was placed in disciplinary

10

segregation; and (2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed on other inmates in solitary confinement.  Shoats, 213 F.3d at 144.

In Shoats, supra, the court found an atypical and significant hardship where inmate had spent eight years in solitary confinement.  Given this, it is clear that the plaintiff's placement in administrative custody for a period of over twenty years would impose an atypical and significant hardship in relation to the ordinary incidents of his prison sentence sufficient to give rise to a state created protected liberty interest.  The issue then becomes whether the plaintiff received the process he was due for his confinement.

In Shoats, the Third Circuit set forth what due process requirements must be afforded to long term administrative custody inmates.  As previously discussed, in that case, the inmate had been confined in administrative custody for over eight years, with the possibility of confinement for the rest of his life.  Despite this, the Third Circuit determined that the plaintiff had received all the due process protections to which he was entitled because he had received periodic review of his administrative custody status through DC-ADM 802.  Shoats, 213 F.3d at 146.  Moreover, the court noted that the plaintiff was confined in administrative custody because he was "in the considered judgment of all the prison professionals who have evaluated him, a current threat to the security and good order of the institution, and to the

11

safety of other people." Id. at 146.  This determination was based on both the inmate's history and on "prison professionals' current impressions of him based on their day-to-day dealings with him over time." Id.  The Shoats court stated:

> In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than the specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners inter se, and the like.  In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents.   The judgment of prison officials in this context, like that of those making parole decisions, turns largely on purely subjective evaluations and on predictions of future behavior.

Id.

Given the court's language in Shoats, the length of time spent in administrative custody is not, alone, an indication of a due process violation. Instead, the inmate's situation, as a whole, must be examined.

Here, the plaintiff admits that he had hearings and appeals pursuant to the provisions set forth in DC-ADM 802.  He argues, however, that they were "rote" and "meaningless" because the PRC does not have the authority to release him.  Prior to May of 2004, the PRC could make the decision to

12

release an inmate on the Restricted Release List into the general population. Effective May 5, 2004, however, DC-ADM 802 was amended to provide that inmates whose names appear on the Restricted Release List cannot be released from administrative custody without the approval of the Secretary of the DOC or his designee[5].   This amendment simply recalled the prior

---

[5]DC-ADM 802 provides, in relevant part:

### VI.   PROCEDURES

#### H.   Release from AC Status

    2.   With the exception of an inmate on the Restricted Release List, the Facility Manager or the PRC may release an inmate from AC status to general population at any time.

    4.   Inmates identified on the Restricted Release List may not be released without the approval of the Secretary/designee.

        a.   the PRC may make a recommendation to the Facility Manager if it is believed that an inmate on the Restricted Release List could be safely released to the general population.

        b.   The Facility Manager must provide rationale for recommending the release of the inmate to the Regional Deputy Secretary.

        c.   If   the   Regional   Deputy   Secretary
(continued...)

13

delegation of authority to the PRC to determine if an inmate on the Restricted Release List could be released into the institution's general population. Because the PRC can still recommend the plaintiff's release to general population, the reviews provided by DC-ADM 802 are not "rote" or "meaningless."

Moreover, the decision to maintain the plaintiff's administrative custody status, according to the records before the court, is due to his own history. To this extent, the PRC has indicated:

> PRC believes that if Mr. Bowen were released into the general population he would be a threat to the safety and security of this institution. This determination is based on a record review that documents a significant history of extreme violence. There are numerous incidents of attempted escapes and creating institutional disorder. Documented incidents

---

[5](...continued)

> disapproves the release of the inmate, the Facility Manager will be advised and the recommendation will not be forwarded to the Secretary/designee.

> d.   If the Regional Deputy Secretary approves the release, he/she will forward the recommendation to the Secretary/designee.

> e.   The Secretary/designee will make the final decision whether or not to release an inmate on the Restricted Release List to general population.

14

> demonstrate that he will go to any length to achieve what he wants and they also demonstrate his blatant disregard for the lives of others.   Some of the incidents resulted in the death of Corrections staff members.

(Doc. No. 15, Ex. 2).

Court records indicate that the plaintiff was convicted and sentenced in 1973 in the Philadelphia County Court of Common Pleas on two counts of first degree murder.  These convictions were for the murder of the warden and deputy warden at Holmesburg Prison committed when the plaintiff attempted to escape[6].  (Doc. No. 15, Ex. 3).  In addition, the plaintiff was convicted of kidnaping and holding for ransom in Montgomery County.  With respect to this conviction, while at Graterford in 1981, the plaintiff took hostages, both staff and inmates, and held them for five days by using firearms.

Considering all of the above, the plaintiff's continued confinement in administrative custody comports with the procedural due process requirements upheld by the Third Circuit in Shoats.  It is not for the court to second guess prison officials' decision with respect to security issues. See e.g., Rhodes v. Chapman, 452 U.S. 337, 349 n.14 (1981)("a prison's internal security is peculiarly a matter normally left to the discretion of prison

---

[6]The defendants' materials indicate that the plaintiff was in Holmesburg Prison because he had been convicted in 1971 of the murder of a Philadelphia police officer.

15

administrators."). Therefore, the defendants' motion to dismiss the plaintiff's procedural due process claim should be granted.

To the extent that the plaintiff argues that his placement in administrative custody for a period of over 20 years is in violation of his Eighth Amendment rights, the Eighth Amendment, which prohibits the infliction of cruel and unusual punishment, guarantees that prison officials must provide humane conditions of confinement. Pursuant to the Eighth Amendment, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994)(quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In order to state an Eighth Amendment claim, the plaintiff must establish that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson Seiter, 501 U.S. 294 (1991)(citations omitted). Moreover, the plaintiff must establish deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297. This second prong requires the court to subjectively determine whether prison officials acted with a sufficiently culpable state of mind. Id. "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Farmer, 511 U.S. at 834.

16

The plaintiff alleges that his placement in administrative custody for a period in excess of twenty years has caused him to suffer ". . . extreme mental anguish, weight loss, sensory deprivation, depression stress, fatigue, insomia (sic), loss of some of his general population privileges, including contact visits with his family, . . ." (Doc. No. 1, pp. 11-12).

The fact that the plaintiff was confined in administrative custody, itself, does not state a claim upon which relief may be granted.  See Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997)(restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).  Moreover, the fact that the plaintiff was deprived those privileges afforded those in the general population does not constitute a deprivation of "the minimal civilized measure of life's necessities."  Therefore, the plaintiff has failed to sufficiently set forth an Eighth Amendment claim, and the defendants' motion to dismiss should be granted on this basis.

To the extent that the plaintiff alleges a violation of the Commonwealth Documents Law, this law sets forth procedures which must be followed any time an administrative agency, such as the DOC, issues binding regulations.  Small v. Horn, 722 A.2d 660, 668-69 (Pa.1998).  In determining whether a cause of action has been stated under the Commonwealth Documents Law, the court must first determine whether the policy at issue is, in fact, a

17

regulation for purposes of the Commonwealth Documents Law, or if it constitutes a mere policy amendment or internal management decision.  Id. at 669.

In Small, the Pennsylvania Supreme Court addressed a situation where the Department of Corrections had issued two "bulletins" that limited the nature of garments that inmates were allowed to wear and possess.  Several inmates challenged the "bulletins," arguing that they were "regulations," which should have been promulgated pursuant to the notice-and-comment provisions of the Commonwealth Documents Law.   The Pennsylvania Supreme Court stated that "the authority to make rules concerning the management of state correctional institutions can fairly be implied from [the DOC's] enabling statute[7]."   Id.   Further, the court cited language from Independent State Store Union v. Pennsylvania Liquor Control Board, 432 A.2d 1375 (Pa. 1981), to come to the conclusion that:

> The Court thus recognized a category of agency decisions that are inherently committed to the agency's sound discretion and that cannot reasonably be subjected to the "normal public participation process."  In other words, the Court "acted to prevent the regulatory process from being used as a means to micromanage [state] liquor stores."

Small, 722 A.2d at 669.

The court found that the DOC's restrictions on inmate clothing fell into

---

[7]See 71 P.S. §310-1.

this category, stating:

> Because of the unique nature and requirements of the prison setting, imprisonment 'carries with it the circumscription or loss of many significant rights . . . to accommodate a myriad of institutional needs . . . chief among which is internal security.' Accordingly, the Department must enforce reasonable rules of internal prison management to ensure public safety and prison security.  These rules must be modified as conditions change, different security needs arise, and experience brings to light weaknesses in current security measures.  Where, as here, the measure has at most an incidental effect on the general public, it is reasonable to conclude that the Legislature did not intend the measure to be subjected to the 'normal public participation process.'

Id. at 669-70.

With respect to the instant action, the policy at issue merely changes the delegation of who may approve the release of inmates on the Restricted Release List to the general population.  Such a policy is a matter of internal prison management.  Moreover, the policy has, at most, an incidental effect on the general public.  As such, the policy does not constitute a "regulation" for purposes of the Commonwealth Documents Law.   Therefore, the defendants' motion to dismiss the plaintiff's complaint should be granted with respect to this claim, as well.

Turning then to the plaintiff's motion for judgment on the pleadings, the plaintiff simply argues that he has sufficiently alleged the personal involvement of each of the defendants so as to proceed with his claims

pursuant to §1983.  (Doc. No. 19).

The defendants do not seek dismissal of the plaintiff's complaint on this basis, nor have they opposed the plaintiff's motion setting forth this argument. However, for the reasons set forth above, the plaintiff's complaint is subject to dismissal for other reasons.  Therefore, the plaintiff's motion for judgment on the pleadings should be denied.

Finally, with respect to the plaintiff's motions for temporary restraining orders, each of these motions, although slightly different, relate to the implementation of DC-ADM 803-1, Inmate Mail and Incoming Publications, a matter unrelated to the claims raised in the plaintiff's complaint.  In order to prevail on a motion for injunctive relief, the plaintiff must establish a relationship between the injury claimed in the motion and the conduct giving rise to his complaint.  See e.g., Nicholson v. Murphy, 2003 WL 22909876 (D.Conn.)(citing Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997)(reversing district court's granting of a motion for injunctive relief because the injury sought to be prevented through the injunction was unrelated and contrary to the injury which gave rise to the complaint)).  To the extent the plaintiff wishes to do so, he may file a separate complaint raising his challenges to DC-ADM 803-1.  However, he may not use the instant action as a mechanism for seeking unrelated injunctive relief. Therefore, the plaintiff's motions for temporary restraining orders should be

dismissed.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

**(1)**   the defendants' motion to dismiss the plaintiff's complaint, **(Doc. No. 13)**, be **GRANTED** in part and **DENIED** in part, as set forth above;

**(2)**   the plaintiff's motion for summary judgment, construed by the court as a motion for judgment on the pleadings, **(Doc. No. 18)**, be **DENIED**; and

**(3)**   the plaintiff's motions for temporary restraining orders, **(Doc. Nos. 28, 30, 32, 34)**, be **DISMISSED**.


S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**


**Date:**  September 8, 2006
O:\shared\REPORTS\2005 Reports\05-1512.01.wpd