IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH BOWEN,<br>     Plaintiff | No. 3:05cv1512<br><br>(Judge Munley) |
| v. | |
| JOSEPH RYAN, JOHN STEPANIK, KENNETH KYLER, FREDERICK K. FRANK, A.S. WILLIAMSON, G.N. PATRICK, C.R. MYERS, FRANK D. GILLIS, R.E. JOHNSON, B.L. LANE, J. PIAZZA, JEFFREY A BEARD, DAVI T. OWENS, RAYMOND CLYMER, JOSEPH LEHMAN, and MARTIN F. HORN,<br>     Defendants | |

## MEMORANDUM

Before the court are plaintiff's objections (Doc. 38) to Magistrate Judge Malachy E. Manion's report and recommendation (Doc. 37). The matter has been fully briefed and is ripe for decision.

**Background**

On July 29, 2005, plaintiff filed a *pro se* civil rights action with this court pursuant to 42 U.S.C. § 1983. (Complaint (Doc. 1)). Plaintiff is an inmate at the Pennsylvania State Correctional Institution, Coal Township (SCI-Coal Township). Plaintiff's complaint alleged that the defendants had placed him in administrative custody without the benefit of due process. (Id. at 7). He has remained in this

restricted confinement for twenty years, without ever receiving meaningful review of that status. (Id. at 9). Plaintiff lacked proper review of his status because he had been placed on the Restricted Release List (RRL), which meant that he could not be released into the general population through normal administrative procedures. (Id. at 10). Plaintiff contends the prison changed policy on such matters in March 2004. (Id. at 16). This change in policy meant that plaintiff lost all of his rights to appeal his status in administrative custody, which he claims violated his due process rights. (Id. at 17). The body that originally had power to determine whether he remained in administrative custody, the Program Review Committee (PRC) lost its power to order the removal of a prisoner from the RRL. (See Pennsylvania Department of Corrections Policy Number DC-ADM 802 (Doc. 15) ("DC-ADM 802")). After the changes in this policy, the PRC could only recommend to the Secretary of the Department of Corrections or his designee that a prisoner be removed from the RRL. (Id. at H(4)(C)). Plaintiff contends that these changes in policy deprived him of his due process rights.

These conditions of confinement led plaintiff to suffer from "extreme mental anguish, weight loss, sensory deprivation, depression, stress, fatigue, insomnia," and loss of contact with his family. (Complaint (Doc. 1) at 11-12). Plaintiff sought an order from the court removing him from the restricted release list and administrative custody, a due process hearing on his confinement, and notice to all prisoners in administrative custody whose names appear on the restricted release list. (Id. at

2

29). Plaintiff also sought at least $100,000 in compensatory damages from each of the 16 named defendants. (Id. at 30-31). He asked for similar amounts of punitive damages. (Id. at 32).

On November 1, 2005, defendants moved to dismiss the plaintiff's complaint. (Doc. 13). The plaintiff responded to defendants' brief by filing a motion for summary judgment (Doc. 18) and a brief in support of that motion. (Doc. 19). The Magistrate Judge construed this document as a motion for judgment on the pleadings. (Doc. 37 at 2). On July 6, 2006, plaintiff filed four motions for temporary restraining orders and supporting briefs. (Docs. 28-35).

On September 8, 2005, Magistrate Judge Mannion issued a report and recommendation. (Doc. 37). Judge Mannion recommended that the defendants' motion to dismiss the plaintiff's complaint be granted in part and denied in part. (Id. at 21). He found that any claims related to plaintiff's initial placement in administrative custody and initial placement on the restrictive release list were barred by the statute of limitations. (Id. at 8). The Judge likewise found plaintiff's Eighth Amendment claims for placement on the restricted release list barred by the statute of limitations. (Id.). Magistrate Judge Mannion held that plaintiff's complaint challenging a May 2004 amendment to prison regulations were not time barred. (Id.). He nevertheless found that those regulations were not invalid under the Pennsylvania Commonwealth Documents Law. (Id. at 19). The Magistrate Judge held that defendant's motion to dismiss the complaint for failure to exhaust

administrative remedies was improper without discovery, since there was insufficient evidence to determine plaintiff's use of administrative remedies. (Id. at 9). The defendants did not object to this finding. The Judge also recommended that plaintiff's motion for judgment on the pleadings be denied, and that plaintiff's motions for temporary restraining orders be dismissed. (Id. at 21). Because the Magistrate Judge recommended that we either bar plaintiff's claims on statute of limitations grounds or dismiss them for failure to state a claim upon which relief could be granted, the effect of our adopting his report and recommendation would be to dismiss the case. For the following reasons, we will do so.

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id. When no objections to a portion of the report and recommendation have been filed, we must determine whether a review of the record evidences plain error or manifest injustice to decide whether to adopt the report. See, e.g., Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983); FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the

court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1).

Here, the court ruled on the defendant's motion to dismiss the complaint for failure to state a claim under FED. R. CIV. PRO. 12(b)(6). When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**Plaintiff's Objections**

We will address each of the plaintiff's objections to Magistrate Judge Mannion's report and recommendations in turn.

**A. The Magistrate Judge's Finding that Plaintiff's Complaint Was Barred by the Applicable Statute of Limitations**

Plaintiff objects to the Magistrate Judge's finding that plaintiff's challenge to his initial placement on the Restricted Release List and in administrative custody is barred by the two-year statute of limitations for § 1983 claims in Pennsylvania. (Report and Recommendation at 7). Plaintiff argues that he "had no knowledge that an [sic] Restricted Release List [e]xisted, until he was informed by the staff at SCI-

Coal Township prior to the filing of this action." (Plaintiff's Objections at 4). He admits, however, that "he was put on the Restricted Release List in 1984 when he was transferred to SCI-Dallas," and that he considers this a "continuing violation of the Eight [sic] and Fourteenth amendment." (Id.).

We cannot agree with plaintiff's objection to this finding. Plaintiff admits that his initial placement the Restricted Release List came in 1984, and he does not offer a date on which he became aware of that listing. Plaintiff brings this case under 42 U.S.C. § 1983. Under that statute, state law applies when determining the appropriate statute of limitations "if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 265 (1985). For cases brought in Pennsylvania, "all § 1983 claims should be characterized for statute of limitations purposes as actions to recover damages for injuries to the person." Springfield Township School District v. Knoll, 471 U.S. 288, 289 (1985). Applying that principal, Pennsylvania law requires that the plaintiff commence his action within two years of his injury. See 42 PA. CONS. STAT. § 5524(7) (establishing a two-year statute of limitations for "any . . . action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct").

Plaintiff apparently argues that he was not aware of his status on the restricted release list until informed by the staff of SCI Coal Township, and that this lack of knowledge means that the statute of limitations on his 1984 placement on that list

had not run. (Doc. 38 at 4). Pennsylvania courts have ruled that the statute of limitations begins to run in cases where an injury is ongoing "when the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's misconduct." Cathcart v. Keene Indus. Insulation, 471 A.2d 493, 500 (Pa. Super. Ct. 1984). The injury of which plaintiff claims–lack of due process in the evaluation of his status–is based on his status on the Restricted Release List. Being on that list, he claims, meant that he could never be released through the normal administrative process. (Plaintiff's Objections (Doc. 38) at 4-5). Plaintiff alleges that he did not become aware of this roadblock to release from administrative custody until the time he began to prepare his suit. We disagree that this lack of knowledge of the RRL means that the statute of limitations had not run. Plaintiff's injury was being kept on administrative custody for twenty years, not his placement on a particular list. Plaintiff had knowledge of this injury from the moment the prison placed him in such custody, and he knew that the cause of that injury was prison policy. The two-year statute of limitations thus bars plaintiff's claim about his placement on the RRL.

Plaintiff's complaints about his status in administrative custody are likewise barred by the two-year statute of limitations. Plaintiff has been held in administrative custody since 1984; he was aware of his alleged injury and its source from the beginning of that period, and the statute of limitations has run. See Sandutch v. Muroskij, 684 F.2d 252, 254 (3d Cir. 1982) (finding that continuing incarceration

does not toll the statute of limitations unless there are "unlawful acts . . . within the limitations period."). We will therefore adopt the Magistrate Judge's report and recommendations in relation to the statute of limitations. Adopting these recommendations disposes of all of plaintiff's claims except those related to the amendment to DC-ADM 802 in May 2004, which altered the procedures for reviewing an inmate's status in administrative custody. In order to dispose of plaintiff's claims not barred by the statute of limitations, as well as in the interest of completeness, we will examine plaintiff's other objections to the report and recommendations.

## B. The Magistrate Judge's Finding that Plaintiff's Procedural Due Process Claim Should be Dismissed

Plaintiff argues that the Magistrate Judge erred in finding that he had not stated a claim that his classification on the RRL violated his due process rights. (Plaintiff's Objection to Report and Recommendations (Doc. 38) at 5). That finding would lead us to dismiss his complaint whether filed within the statute of limitations or not. Plaintiff contends that placement on the RRL meant that he was "<u>Reclassified</u> and Put on a Punitive condition of Confinement without his <u>Knowledge</u>, <u>notification</u> or Opportunity to challenge a classification that changed his condition of confinement to one of indefinite confinement in the RHU." (<u>Id.</u> at 5-6) (emphasis in original). Plaintiff appears to argue that the Magistrate Judge misconstrued his complaint as a challenge to the procedures used to place him in administrative

8

confinement. (Id. at 6) (arguing that "plaintiff's complaint <u>do not</u> [sic] challenge his confinement (<u>A.C. status</u>) under the provisions set forth in DC-ADM-802 (emphasis in original)). Plaintiff's true complaint, he contends was with "being subjected to an [sic] secret punitive classification (R.R.L.) [w]ithout any due process. (Id.).

Even if the plaintiff's complaint is with the RRL, we would still adopt the Magistrate Judge's report and recommendation on due process.[1] Prisoners enjoy due process rights, but these rights are limited by the unique demands of prisons and require a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." <u>Wolff v. McDonnel</u>, 418 U.S. 539, 556 (1974). To make out a procedural due process claim, an inmate must show that the prison's actions limited a protected liberty interest, and that procedures involved fell short of constitutional requirements. <u>Shoates v. Horn</u>, 213 F.3d 140, 143 (3d Cir. 2000). Normally, transfer from one level of custody in a prison to another does not impinge a constitutionally protected interest. <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (holding that there is no liberty interest invoked "when a prisoner is transferred to the institution with the more severe rules."); <u>Hewitt v. Helms</u>, 459 U.S. 460, 468 (1983) (finding that "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"). Prisoners

---

[1] We note that plaintiff's ultimate complaint is with where he is confined, however he chooses to phrase it.

9

transferred to a more restrictive setting within a prison have a state-created liberty interest only when that confinement "'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Asquith v. Department of Corrections, 186 F.3d 407, 412 (3d. Cir. 1999) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Plaintiff's twenty years in administrative confinement clearly creates an "atypical and significant hardship in relation to the ordinary incidents of prison life," but that finding does not end the inquiry for purposes of procedural due process. See Shoats, 213 F. 3d 140 (finding that eight years of confinement in administrative custody created hardship worthy of due process concern). The question then becomes what process a prison setting requires. Such process must include "some notice of the charges against [a prisoner] and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative custody." Id. (quoting Hewlitt v. Helms, 459 U.S. 460, 476 (1983)). In most cases, a written statement from the prisoner challenging the reasons for his placement in a particular setting is sufficient to protect due process rights, as long as "the decision maker reviews the charges and then-available evidence" against the prisoner. Id.

The procedure afforded the plaintiff in relation to the Restricted Release List met these due process requirements. While the amended version of DC-ADM 802 prevents the PRC from ordering the removal of a prisoner from the RRL and thus limits the ability of that body to order the placement of a prisoner in the general

population, such restrictions do not undermine the procedural rights due the plaintiff to the degree that he could make out a procedural due process claim. Plaintiff enjoys a hearing on his status every ninety days before the PRC. Before the change in policy in May 2004, plaintiff, as he admits, could challenge his status on the RRL before the Council. The PRC's review of his status provided him with sufficient notice of the charges against him and gave him adequate opportunity to challenge those charges. Transfer of the final decision on whether to remove the plaintiff from the RRL to the Secretary from the PRC does not make the procedure deficient, since plaintiff had notice in the regulations of the changed status, and an opportunity to make his case to the PRC that he no longer belonged on the list. Due Process for prisoners does not include the right to determine who the ultimate decision-maker in their cases is, but simply the right to present a case to a body that helps to determine that claim. See Shoats, 213 F.3d at 145 (holding that "an inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation."). Given the minimal nature of the due process required for prisoners, we fail to see how the new procedures used by the Pennsylvania Department of Corrections undermines plaintiff's constitutional rights. We will therefore adopt the report and recommendations on this matter.

**C. The Magistrate Judge's Findings Related to Plaintiff's PRC Hearing and Appeals**

Plaintiff contends that the Magistrate Judge erred in finding that the hearings used by the prison in restricting him to administrative confinement satisfied due process requirements. These hearings, he argues "were held in [a] rote and meaningless fashion," particularly since no procedure had been established by the department of corrections to determine that he qualified for the Restricted Release List. (Plaintiff's Objections (Doc. 38) at 7). Because he would have to be removed from the restricted release list before the administrative review could return him to the general population, plaintiff alleges that any administrative hearings were meaningless. (Id.). Those administrative review hearings, he argues, could not change his status, and seemed to exist merely for show. (Id.). Plaintiff thus contends that the hearings violated his right to due process. (Id.).

Plaintiff has not alleged that the periodic reviews required by the PRC regulations did not occur, or that the hearings themselves were damaged by the introduction of fraudulent testimony. Instead, he argues that the hearings were "rote" and "meaningless" because his status on the Restricted Release Lease meant that he could not be released from administrative custody by the PRC no matter what evidence he presented. This means, apparently, that the hearings themselves violated his due process rights. We note that under the terms of amended DC-ADM 802, the regulation that governs procedures for release from administrative custody, the PRC could play a role in determining whether an inmate could be released from administrative custody. See DC-ADM 802 VI(H)(4)(a) (holding that "the PRC may

make a recommendation to the Facility Manager if it is believed that an inmate on the Restricted Release List could be safely released to the general population."). In that sense, the prison did have procedures in place that made PRC hearings more than simply a *pro forma* exercise; an inmate on the RRL could present evidence that would help cause a change in his status. In any case, the Third Circuit has determined that "the periodic reviews conducted by the PRC here comport with the minimum constitutional standards for due process." Shoats, 213 F.3d at 147. The plaintiff thus has no complaint about the procedures used by the PRC to review his status in administrative custody.² We will accordingly adopt the Magistrate Judge's recommendation on this point.

### D. The Magistrate's Findings Related to Procedural Due Process

Plaintiff also attacks the Magistrate Judge's ruling on the sufficiency of the procedure used to determine his suitability for the Restricted Release List. (Plaintiff's Objections (Doc. 38) at 9). He argues that the Magistrate Judge erred by focusing on the sufficiency of the procedures used to place him in administrative custody, not to maintain him on the RRL. (Id.). Plaintiff complains that the Magistrate Judge failed to examine the propriety of the process that kept him on that

---

²Under DC-ADM 802, the prisoner's status is reviewed every 90 days by the Program Review Committee. This three-person panel includes the Deputy Superintendent, an corrections officer, and another program member. See DC-ADM 802 (E). At these meetings, the PRC "interviews" the prisoner and then issues a report on its decision to release the inmate to the general population or keep him confined in administrative custody. Id. at (E)(5). The inmate receives a copy of this report. Id.

list "for over twenty (20) years." (Id.).  This appears to be the same objection expressed in section B, *supra*.  The complaint in either case is with the procedure used to put plaintiff on the RRL.  For the same reasons stated previously we will adopt the Magistrate Judge's report and recommendation on this matter.

### E. The Magistrate Judge's Findings on Whether the Prison Violated the Commonwealth Document Law

The plaintiff also challenges the Magistrate Judge's finding that changes to prison policy regarding who makes the decision to remove an inmate from the restricted release list did not violate Pennsylvania's Commonwealth Document Law, 45 PA. CONS. STAT. § 1101 etc. (Doc. 38 at 9-10).  Plaintiff argues that "the Restricted Release List is incorporated within the Established DC:ADM [sic]: 802 Policy that is in accord with state and federal laws," and that this list constitutes "policy because it determines an inmate[']s condition of confinement." (Id. at 10). Plaintiff's position is that since the policy establishes a "standard of conduct" and makes conditions of confinement more onerous, it must be promulgated according to the procedures defined by the law. (Id.)

Under the Commonwealth Documents Law, an agency must "review and consider any written comments" and "hold such public hearing as seem appropriate" "before taking action upon any administrative regulation or change therein." 45 PA. CONS. STAT. § 1202.  The key in such cases is to determine whether the prison policies in question "are in fact 'regulations' for purposes of those acts or if they are .

. . mere 'policy amendments' or 'internal prison management decisions.'" Small v. Horn, 554 A.2d 600, 609 (Pa. 1998). A rule that "has at most an incidental effect on the general public" does not require the same participation of the public as regulations covered by the Commonwealth Documents Act. Id. There is "a category of agency decisions that are inherently committed to the agency's sound discretion and that cannot reasonably be subjected to the 'normal public participation process.'" Id. at 610 (quoting Giant Food Stores Inc. v. Commonwealth Dep't of Health, 713 A.2d 177, 181 (Pa. Commw. Ct. 1998).

In prisons, "the curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives of prison facilities." Hudson v. Palmer, 468 U.S. 517, 524 (1984) (quoting Wolff v. McDonnell, 418 U.S. 539, 555 (1974)). "Chief among" those institutional needs "is internal security," through "restrictions or retractions also serve, incidentally, as reminders that, under our system of justice, deterrence and retribution are factors in addition to correction.' Hudson, 468 U.S. at 524. A prison "must enforce reasonable rules of internal prison management to ensure public safety and prison security," and "these rules must be modified as conditions change, different security needs arise, and experience brings to light weaknesses in current security measures." Small v. Horn, 722 A.2d 664, 670 (Pa. 1998); see also Rhodes v. Chapman, 452 U.S. 337, 350 (1981) (finding that "a prison's internal security is peculiarly a matter normally let to the discretion of prison administrators").

The changes to prison policy of which plaintiff complains concerned DC-ADM 802, which covered the procedures by which a prisoner could be removed from administrative custody. Those procedures were amended in May 2004 to provide that an inmate could not be removed from the restricted release list without approval from the Secretary of the Department of Corrections or his designee. Previously, an inmate could be removed from that list by a vote of the PRC.[3] These changes are the type of policy changes not covered by the Commonwealth Documents Law, especially because, as defendant points out, the authority the PRC previously enjoyed was simply a delegation of authority properly held by the Secretary or his

---

[3]See DC-ADM 802, which provides in part:
H. Release from AC Status
    2. With the exception of an inmate on the Restricted Release List, the Facility Manager or the PRC may release an inmate from AC status to general population at any time.
    4. Inmates identified on the Restricted Release List may not be released without the approval of the Secretary/designee.
        a. the PRC may make a recommendation to the Facility Manager if it is believed that an inmate on the Restricted Release List could be safely released to the general population.
        b. The Facility Manager must provide rationale for recommending the release of the inmate to the Regional Deputy Secretary.
        c. If the Regional Deputy Secretary disapproves the release of the inmate, the Facility Manager will be advised and the recommendation will not be forwarded to the Secretary/designee.
        d. If the Regional Deputy Secretary approves the release, he/she will forward the recommendation to the Secretary/designee.
        e. The Secretary/designee will make the final decision whether or not to release an inmate on the Restricted Release List to the general population.

designee. (Defendants' Brief in Opposition to Plaintiff's Objections to Report and Recommendation (Doc. 40) at 3). The regulations relate to ordinary security measures that constitute part of the fundamental mission of prisons. The prison's decision to alter the terms of the restricted release list is decision committed to agency discretion, since that list and the administrative custody attached to it are reasonable rules of administrative security designed to protect the prisoners, prison staff, and the public. Changes to those rules reflect the response of prison officials to changing circumstances. The procedures used to determine whether a prison should be held in administrative custody or in the general population has little, if any, impact on the public. Accordingly, the decision to change the terms of the restricted release list is not the type of agency decision that requires notice and comment. We will adopt the Magistrate Judge's report and recommendation on this point.

**Other Findings by the Magistrate Judge**

The plaintiff does not object to the Magistrate Judge's recommendations that the court deny plaintiff's motion for a judgment on the pleadings and dismiss plaintiff's motions for temporary restraining orders. The defendants did not object to the Magistrate Judge's recommendation that plaintiff's claims related to the May 2004 DC-ADM 802 were not barred by the statute of limitations. When a party fails to object to a portion of a Magistrate Judge's report and recommendation we must determine whether a review of the record evidences plain error or manifest injustice in order to determine whether to adopt the Magistrate Judge's findings. See, e.g.,

<u>Sullivan v. Cuyler</u>, 723 F.2d 1077, 1085 (3d Cir. 1983); FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1). We find neither plain error nor manifest injustice in these findings, and we will adopt the report and recommendations.

**Motion for Appointment of Counsel**

On September 26, 2006 plaintiff filed a motion for appointment of counsel in this case (Doc. 39). Because we today adopt the report and recommendation of the Magistrate Judge and dismiss this case, we will deny the plaintiff's motion as moot.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH BOWEN,<br>    **Plaintiff** | No. 3:05cv1512 |
| | (Judge Munley) |
| v. | |
| JOSEPH RYAN, JOHN STEPANIK, KENNETH KYLER, FREDERICK K. FRANK, A.S. WILLIAMSON, G.N. PATRICK, C.R. MYERS, FRANK D. GILLIS, R.E. JOHNSON, B.L. LANE, J. PIAZZA, JEFFREY A BEARD, DAVI T. OWENS, RAYMOND CLYMER, JOSEPH LEHMAN, and MARTIN F. HORN,<br>    **Defendants** | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this _29th_ day of November 2006, it is hereby ordered as follows:

1) The plaintiff's objections to the Magistrate Judge's report and recommendations (Doc. 38) are hereby **OVERRULED**;

2) The report and recommendation (Doc. 37) is **ADOPTED**;

3) Plaintiff's complaint (Doc. 1) is **DISMISSED**;

4) Plaintiff's motion for appointment of counsel (Doc. 39) is **DENIED** as moot; and

5) The clerk of court is directed to close the case.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court